# NEW YORK SUPERIOR COURT.

## STOUT agt RAPPELHAGEN.

A sale of personal property made without being accompanied by an immediate delivery and followed by an actual and continued change of possession of the thing sold, is, as against creditors, presumptively fraudulent and void.

An actual change of possession means an open, visible, palpable change, manifested by such outward signs as render it evident that the possession of the vendor or owner has wholly ceased.

A constructive, secret and symbolical delivery is insufficient to pass title.

*Special Term, January*, 1876.

*Wilber Shaw*, for plaintiffs.

*B. D. Penfield*, for defendants.

SANFORD, *J.* — This action was brought in aid of an execution issued to the sheriff of the county of New York on the 8th November, 1875, under a judgment recovered November 5th, 1875, in favor of the plaintiffs and against the defendant Henry Buck. On and prior to said eighth November, Buck, the judgment debtor, was engaged in the retail grocery business at No. 38 Orchard street, New York, owning a lease of the premises, the fixtures used in his business and a small stock of merchandise, consisting of tea, coffee, sugar, &c. The business had been purchased by him on credit some years previously from the defendant Rappelhagen, who was the husband of his sister, at the price of $2,800, whereof $2,100 had been paid prior to May 15, 1873, leaving then and ever since unpaid the sum of $700. The lease having then

nine years to run was assigned to him by Rappelhagen, May 1st, 1874, subject to the rents reserved therein, and in consideration of $120 per annum to be paid by him to Rappelhagen, in monthly payments, during the remainder of the term. Buck was without means when he bought the business, and has ever since lived with his sister and her husband. No bill of sale was ever delivered to him, and he gave no note or other written evidence of indebtedness for the price.

On Sunday, November 7, 1875, two days after the recovery of the plaintiff's judgment against Buck, and the day before execution was issued thereon, it was verbally agreed between Buck and Rappelhagen, at the house of the latter, and in presence of his wife, Buck's sister, that Rappelhagen should buy back the business, lease, fixtures and merchandise, for $1,100 then claimed and admitted to be due him from Buck. $700 of this amount was the unpaid portion of the purchase-money on the sale from Rappelhagen above mentioned, and the residue thereof, $400 (with eighty-four dollars besides, in all $484), was claimed as due for advances previously made by Rappelhagen for Buck's account and benefit. For at least three months before, Rappelhagen had made no request for the payment of the money thus claimed to be due him, nor had he within that period visited Buck's place of business. Early on the following morning, November eighth, Buck and Rappelhagen met at the store in Orchard street, and went thence together to a lawyer's office, where a formal bill of sale was drawn up and executed by Buck, purporting to transfer to Rappelhagen for the expressed consideration of $1,100, "all the stock and fixtures and lease of the grocery store located at and known as No. 38 Orchard street, New York city." No examination whatever, was made by Rappelhagen, and no inventory taken of the stock on hand, nor were the books of the business referred to for information as to the accounts due to or from Buck. No money or other value passed at the time, nor is it claimed or pretended that there was any other consideration for the

Stout agt. Rappelhagen.

transfer than the antecedent indebtedness above mentioned. A formal assignment of the lease, with an expressed consideration of one dollar, was at the same time drawn up and executed and acknowledged by Buck, and Rappelhagen was told by the lawyer, that he "must take possession." Buck and Rappelhagen then went back to the store, and Rappelhagen thereupon, as he swears (for no other witness was examined on behalf of the defendants), "took possession." By what particular process or in what precise manner this result was achieved does not appear, except that there was a conversation in substance as follows: Rappelhagen asked Buck if he would clerk for him, to which Buck replied that he would for eighteen dollars a month and his board. To this Rappelhagen agreed, and thereupon, to use his own language, he went away to his own business in Ludlow street. He then was and ever since has been a dealer in feed and the proprietor of a feed store at No. —, Ludlow street. Buck has since remained in charge of the grocery, making sales of the stock from time to time, and he was found on the premises thus engaged on the evening of the eighth November, when the deputy sheriff called there with the plaintiff's execution. No ostensible indication of any change in the business or in its apparent ownership was exhibited until some days after the sale, when Rappelhagen's name was put up over the shelving inside the store; but, on cross-examination, Rappelhagen, who had, in his own behalf, stated this fact, testified that he could not state whether it was done before or after the commencement of the present suit. He further testified that Buck had paid over to him the proceeds of sales every night, but it does not appear that he has ever personally taken any part in the conduct of the business.

From the evidence in the case, of which the foregoing is a brief summary, I have no hesitation in arriving at the conclusion, that the sale in question was not " accompanied by an immediate delivery, and was not followed by an actual and continued change of possession of the thing sold," and

was, therefore, as against creditors, presumptively fraudulent and void (2 *R. S.*, 136, *sec.* 5). It was held by this court in *Randall* agt. *Parker* (3 *Sandford S. C. R.*, 69), that by an actual change of possession the statute means an open, visible, palpable change manifested by such outward signs as render it evident that the possession of the vendor as owner has wholly ceased, and that a constructive, secret and symbolical delivery is insufficient to pass title. The delivery of a key, although symbolically a delivery of the goods as between the parties, was in that case declared to be, in respect to creditors, "an idle and unmeaning ceremony." In like manner I cannot but regard the formal taking of possession by Rappelhagen in this case, under the advice of his counsel, as a delusion and a snare, and the continuance of Buck in the possession and charge of the premises and the property, under the guise of a clerkship, as a transparent device.

But the presumption of fraud, founded upon the fact of no immediate delivery and no actual and continued change of possession, is not absolutely conclusive. It may be rebutted by persons claiming under the sale, and who assert its validity, by affirmative proof on their part that it was made in good faith, and that "the real intention of the parties involved no such fraud as the law imputed to them" (*Randall* agt. *Parker*, *supra*). The terms "in good faith" and "without any intent to defraud," are not entirely synonymous. That it was made "in good faith" as between the parties, may be predicated of a sale for an actual and valuable consideration, where a real and not merely colorable transfer is intended to be effected; but even such a sale will be fraudulent and void as against creditors of the vendor, where the conditions of the statute with respect to delivery and change of possession are not complied with, unless it be also made to appear, on the part of the vendee, that there was an entire absence of any intent on his part to withdraw the thing sold from the reach of legal process, or to prevent its application to the discharge of the vendor's debts, which is the fraudulent pur-

pose imputed and presumed from the fact of non-delivery and the continued possession of the vendor.

It is claimed by Rappelhagen that his good faith, and the absence of any fraudulent purpose or design, are abundantly established by the facts in the case; that the bill of sale was regular and valid on its face; that there was an actual and adequate consideration for the transfer; that the transaction was consummated under the advice and with the aid of a lawyer; that the business has since been conducted solely for his benefit; and that, at the date of the transfer, he was not cognizant of the execution or judgment, nor, indeed, of Buck's indebtedness to the plaintiffs. If these facts exist and are sufficient to rebut the statutory presumption of fraud raised by Buck's continuance in actual possession — if they conclusively establish the good faith of the vendee and the absence of any intent on his part to impair the rights and remedies of creditors — the validity of the transaction must be upheld; otherwise the statutory presumption becomes conclusive and the transfer must be deemed fraudulent and void.

The due and regular execution of the papers, under the direction and with the advice of a lawyer, is entitled to but little weight in determining this question. Indeed, the care and caution observed in their preparation, when contrasted, as they well may be — with the informal manner in which the original transfer of title was effected between the same parties, leads rather to the inference that apprehensions may have been entertained which rendered care and caution and a compliance with legal forms desirable, since, except for the impending execution, there was no special occasion, so far as appears, for such care or caution, nor indeed for an immediate delivery and an actual and continued change of possession; nor does the excellent advice of the lawyer, with respect to the necessity of such delivery and possession, seem especially pertinent, unless it be assumed that the recovery of the plaintiff's judgment was well known to all concerned, and that

the shadow of the coming execution was already forecast. It was said, *Chapman* agt. *O'Brien* (34 *Superior C. R.*, 524), that "the papers are usually correct on their face, in cases of fraudulent transfer, to avoid process." But neither such regularity nor the existence of an actual and adequate consideration furnishes decisive evidence of good faith, and both may be coexistent with the purpose and design which the statute reprobates.

The whole question *is* one of fact; and all the incidents and concomitants of such transfers are entitled to consideration and weight in arriving at a conclusion. It often happens, while no single feature or circumstance can be specifically touched with the finger, as alone affording evidence to impugn the honesty of a sale, yet that all the circumstances, when combined and viewed in connection, will produce an irresistible conviction of inherent and essential taint (*May* agt. *Walter*, 56 *N. Y.*, 8). Such an impression was produced on my mind by the testimony at the trial, and it has become conviction under the influence and as the result of a more extended and deliberate examination and consideration of both facts and law. I am constrained to believe that no sale or purchase would have occurred, or would have been thought of, but for the exigency created by the anticipated execution, and that the real object of both seller and purchaser was to save the property from seizure and sale by the sheriff. Rappelhagen's denial of any knowledge of Buck's indebtedness is insufficient in my judgment to outweigh the inferences deducible from the facts of the case as testified to by himself. He brings neither his wife nor Buck nor the lawyer to corroborate and confirm his statements. The sale was not made in the usual course of business; he had a different business of "his own." The only consideration for it was an antecedent debt of long standing, the collection of which had never, so far as appears, been earnestly pressed. Creditor and debtor were inmates of the same household, and nearly connected by family ties, yet had there been no request for any payment

Stout agt. Rappelhagen.

on account during three whole months next preceding the Sunday on which the transfer was negotiated. No special reason has been assigned and none save the impending execution suggests itself for such sudden anxiety on Rappelhagen's part as would justify him in sending on Sunday for his brother-in-law, an inmate of his own household, whom he had met daily at his own table for three months without a word of solicitation, and whose store he had not once visited during all that time, in order to negotiate a purchase which could not be intelligently made without an examination of the property and the taking of an inventory. Had the object been merely to effect an honest purchase without reference to impending danger counsel would scarcely have been visited so early the next morning; nor would the transparent farce of "taking possession," to which Rappelhagen testifies, been enacted. These circumstances are all pregnant with suspicion. They certainly do not suffice to make it appear on the part of the vendee that he acted in good faith and without intent to defraud.

The bill of sale and assignment of lease must be adjudged fraudulent and void, and Rappelhagen must account for the goods, or their proceeds, that have come to his hands.

Judgment ordered accordingly, with costs.